764 P.2d 423

**BROWN'S TIE & LUMBER COMPANY,**
an Idaho corporation,
Plaintiff–Appellant,

v.

**CHICAGO TITLE COMPANY OF IDA-
HO,** an Idaho corporation; and Chica-
go Title Insurance Company, a Mis-
souri corporation, Defendant–Respon-
dents.

**CHICAGO TITLE COMPANY OF
IDAHO,** an Idaho corporation,
Counterclaimant–Respondent,

v.

**BROWN'S TIE & LUMBER COMPANY,**
Counterdefendant–Appellant.

No. 16732.

Supreme Court of Idaho.

Oct. 27, 1988.

Evans, Keane, Koontz, Boyd & Ripley, Boise, for plaintiff-appellant. Blaine F. Evans argued.

Cantrill, Skinner, Sullivan & King, Boise, Idaho, for defendant-respondent, Chicago Title Co. of Idaho. Willis E. Sullivan III argued.

Givens, McDevitt, Pursley, Webb & Buser, Boise, for defendant-respondent, Chicago Title Ins. Co. Charles F. McDevitt argued.

1988 Opinion No. 54, filed June 20, 1988, is hereby withdrawn, and this opinion is substituted therefor.

BAKES, Justice.

This case involves a defaulted land sales agreement and an erroneous reporting of title to real property that allegedly caused damage to the seller. The plaintiff, Brown's Tie & Lumber Company (Brown's Tie), contracted to sell the Quality Inn Motel in Boise, Idaho, to a group of Californians, whose interest as buyers was bought out by Terrance R. Batt. Chicago Title Company of Idaho (Local), one of the defendants here, acted as the closing agent for the sale, and was also designated as the trustee under Brown's Tie's deed of trust. In February 1981, Batt defaulted and Brown's Tie directed Local to proceed with foreclosure and to issue a commitment to insure title to the purchaser at the foreclosure sale. Early the next month, Local issued a foreclosure report and commitment for title insurance. In issuing the commitment, Local acted as agent for Chicago Title Insurance Company (National), the other defendant here. Thereafter, Local gave the required notice of a trustee's sale scheduled for August 3, 1981.

After the statutory time for curing the default had expired, Batt and Brown's Tie began negotiating a consensual cure agreement. Because a feature of the agreement was Batt's promise to cure unauthorized encumbrances against the property, Brown's Tie, in late July 1981 prior to accepting the cure, contacted an employee of Local to receive an update on all encumbrances upon the property. Local advised Brown's Tie that no subsequent liens or encumbrances had been recorded, when in fact Batt had recorded a deed of trust subsequent to issuance of the commitment without the knowledge or consent of Brown's Tie. This instrument, which the parties have termed the Hoback deed of trust, was in the amount of $880,000. Acting upon this information from Local, Brown's Tie decided not to foreclose and allowed Batt to cure.

In August 1981, Batt again defaulted, and Brown's Tie again ordered foreclosure proceedings. Local's foreclosure report and commitment for title insurance failed to report or disclose Batt's deed of trust.

A second foreclosure sale was scheduled for January 7, 1982. However, in early November, Local discovered the unreported deed of trust and notified Brown's Tie of its existence. Brown's Tie thereupon made a written claim to Local and National under the title insurance commitment for damages caused by their failure to discover and report the deed of trust, and for damages that might result from any delayed foreclosure sale. Local and National responded with a joint letter dated November 5, 1981. In it they neither admitted nor denied liability. They stated that if the January foreclosure sale were not postponed, Local would resign as trustee, and the title policy given at the sale would include an exception for the deed of trust which Local had initially failed to disclose. Brown's Tie alleges it had no reasonable alternative but to allow postponement of the foreclosure sale. The foreclosure sale was then re-set for March 15, 1982.

Meanwhile, Batt filed bankruptcy proceedings in California, and as a result, the March 1982 foreclosure sale was vacated by a bankruptcy court's restraining order. Brown's Tie contends that the defense of the bankruptcy action was tendered to Local and National, but both rejected the defense. After filing briefs and attending a hearing, Brown's Tie was eventually able to reach a settlement with the bankruptcy trustee. The settlement provided that the foreclosure sale would be allowed to proceed, and that the property would be encumbered by an option in favor of the trustee to purchase the motel on or before May 10, 1982.

Eventually, Brown's Tie, through realtor Paul B. Larsen, was able to obtain a binding sale agreement from a third party by July 23, 1982, and the transaction closed on September 1, 1982, with financing terms for $2.8 million. Thereafter, Brown's Tie demanded compensation from Local and National for damages incurred as a result of the failure to discover Batt's deed of trust. Brown's Tie argues that at no time have Local or National admitted insurance coverage or liability for damages. Brown's Tie's claim was denied by defendants.

Brown's Tie then filed suit, alleging breach of contract, negligence, negligent misrepresentation, breach of fiduciary duty, insurer's bad faith, and unfair claim settlement practices. Brown's Tie sought as damages alleged losses resulting from the delay in the sale of the motel, including operating expenses or losses during the period of delay. Brown's Tie submitted the affidavit of a realtor, Paul B. Larsen, who stated "that had plaintiff regained clear title to the Quality Inn on August 3, 1981, the property could have been sold to other buyers for approximately $2.8 million on or about October 1, 1981."

This certified appeal comes from an entry of partial summary judgment in which the district court essentially said that Brown's Tie had an action in contract, not tort. Brown's Tie assigns error to the dismissal of its claims of negligence, negligent misrepresentation, and insurer's bad faith. Brown's Tie also challenges the trial court's order in limine which excluded evidence of operating expenses and losses during the alleged period of delay, and evidence relating to a hypothetical sale which would have occurred earlier but for the failure to discover and report Batt's deed of trust.

I.

Defendants assert that the trial court properly dismissed plaintiff's tort claims. They cite the case of *Anderson v. Title Ins. Co.*, 103 Idaho 875, 655 P.2d 82 (1982), and argue that the contracts for title insurance and policies are the source of the duties between the parties, not negligence principles. We agree.

In *Anderson*, the purchasers of real property sought to bring an action in negligence against a title insurance company which had failed under a policy of title insurance to except a properly recorded conveyance. The negligence action was pursued despite the fact that the insurer had tendered the full amount of the policy, such amount equaling the purchase price of the land in question. The substance of the purchasers' argument was as follows:

"Appellants contend that a title insurance company is liable in tort for failure to discover the conveyance of a portion of purchasers' land to the State of Idaho. Appellants argue that the practice in Idaho is that parties generally buy title insurance and rely on the insurance rather than an abstract of title. ˙ Before a purchaser buys property he orders a preliminary title report which tells him that the policy will insure against all encumbrances except those specifically listed in the report. Appellants argue that the purchaser is relying on the title insurer in the same manner in which he would rely on an abstractor of title and therefore the insurer has the same obligation as an abstractor and is liable in tort for errors or omissions." *Id.*, at 876, 655 P.2d at 83.

The *Anderson* court rejected this argument, noting that the insurance company had not purported to act as anything other than a title insurance company and had not assumed any duties in addition to that of issuing a policy of title. *Ford v. Guarantee Abstract and Title Company, Inc.*, 220 Kan. 244, 553 P.2d 254 (1976), a case in which a title insurance company had acted as an escrow agent, was held distinguishable. *Anderson, supra,* 103 Idaho at 877, 655 P.2d at 84.

■ To fall outside the rule of *Anderson,* it must be shown that the act complained of was a direct result of duties voluntarily assumed by the insurer in addition to the mere contract to insure title. As we explain below in our discussion of damages, negligence liability will not be imposed upon a title insurer absent these additional circumstances because title insurance only insures against damage resulting from defects in the insured's title in the property, and does not represent that the contingency insured against will not occur.

In the instant case, Local has acted as closing agent, as trustee, and as agent for the insurer, National. There are essentially two acts of Local's which form the basis of Brown's Tie's negligence and negligent misrepresentation claims: the first is the July 1981 verbal update of encumbrances by Local; the other is the second commitment for title insurance issued in September 1981, which failed to report the $880,000 Hoback deed of trust.

■ With regard to the first act, the verbal update in July of 1981, neither the Brown's Tie–Batt deed of trust nor the Idaho Trust Deeds Act, I.C. §§ 45–1502 *et seq.*, establishes a duty on the part of Local to provide such updates. Further, as insurer, Local had fulfilled all of its obligations under its first commitment for title insurance and had, in fact, accurately reported the status of title to the Quality Inn. Because the verbal update was not given pursuant to Local's role as trustee, the *Anderson* rule applies barring any cause of action based upon negligence for this act. Further, the act does not fall within the Restatement (Second) of Torts § 552 because separate consideration was not given for the verbal update.[1]

■ As to the second commitment for title insurance, which failed to note the Hoback deed of trust, it clearly was an action taken pursuant to Local's role as insurer and agent for National. Thus, *Anderson* is directly applicable and plaintiffs' theories based upon negligence were properly dismissed.

■ Brown's Tie urges that the holding in *Anderson* does not apply since I.C. § 41–2708(1)(b) was not in force at that time. The statute provides:

"**41–2708. Determination of insurability—Prohibited risks—Rebates.—(1)** Insurability. No title insurance on real property in the state of Idaho shall be issued unless and until the title insurer or its agent:

.  .  .  .  .

"(b) Has caused to be made a search and examination of the title and a determina-

---

1. This cause of action has never been recognized in Idaho and we do not, by today's opinion, intend to do so. We simply note that even if Idaho did recognize the rule, the facts of this case would not fall within it. We reserve the question whether Idaho will permit recovery under negligent misrepresentation for another day.

tion of insurability of title in accordance with sound title underwr..ing practices. ..."

Brown's Tie suggests that the above language creates a duty on the part of title insurers to conduct a reasonable search of title before issuing a policy. We disagree.

Unlike similar statutes of sister states,[2] section 41–2708(1) of the Idaho Code does not mandate a "reasonable search" of title. It provides only that "a search and examination of the title" shall be made. We find it significant that the Idaho legislature, unlike other states, has chosen to omit the word "reasonable." It has long been the rule in Idaho that only abstractors of title may be found negligent, *see Merrill v. Fremont Abstract Co.*, 39 Idaho 238, 227 P. 34 (1924), and this Court has never deviated from the rule. *See e.g., Anderson, supra.* A familiar rule of statutory construction provides that a statute will not be construed so as to overturn long-established principles of law "unless an intention to do so plainly appears by express declaration or necessary or unmistakable implication, and the language employed admits of no other reasonable construction." *Doolittle v. Morley*, 77 Idaho 366, 372, 292 P.2d 476, 481 (1956).

No such intention plainly appears from the face of I.C. § 41–2708(1). Rather, as the trial court below wrote in its well-reasoned memorandum decision:

"[A]llegations of negligent performance of duties under I.C. § 41–2708 simply characterize a form of breach. Theories of r ¬lpractice sounding in negligence may be necessary where there is no contractual duty or contractual standard existent upon which to measure performance. Here, however, the duty or standard of performance is set forth by contract—the foreclosure reports and title insurance commitments—and measurement of performance can be fully accomplished by reference to the contracts.

Any malpractice becomes a form of breach, rather than a separate claim for relief or cause of action."

We hold that I.C. § 41–2708 does not create a duty in tort upon the part of title insurers to conduct a reasonable search and inspection of title. Further, we hold that Brown's Tie has not averred circumstances which would avoid the rule of *Anderson*, which is controlling in this appeal; accordingly, we affirm the trial court's dismissal of Brown's Tie's negligence claims. Also, the dismissal of the negligent misrepresentation count is affirmed for the reasons stated above.

II.

■ Brown's Tie also appeals from the trial court's dismissal of its allegation of insurer's bad faith in settling claims. *See, e.g., White v. Unigard*, 112 Idaho 94, 730 P.2d 1014 (1986). Brown's Tie asserts that when the Hoback deed of trust was disclosed, it immediately made a claim for coverage and damages for delay under the insurance commitment. Brown's Tie argues that Local and National jointly threatened to change the terms of the title policy by inserting an exception for the Hoback deed of trust unless Brown's Tie agreed to a delay in the foreclosure sale.

The Brown's Tie–Batt deed of trust, which was drafted by counsel for Brown's Tie, specifically granted Local the power to delay the foreclosure sale and recognized its statutorily imposed notice obligations as trustee. *See* I.C. § 45–1505. The action of Local in delaying the scheduled foreclosure sale after discovering the Hoback deed was necessary to clear that trust deed from title at the judicial sale, and therefore was a proper exercise of its powers as trustee and cannot form the basis for an insurer's bad faith claim.[3]

■ Brown's Tie also argues that when the California bankruptcy trustee filed a

---

2. *See* Alaska Stat. § 21.66.170; Fla.Stat. § 627.7845; Kan.Stat.Ann. § 40–235; Nev.Rev. Stat. § 692A.220; N.M.Stat.Ann. § 59A–30–11; Tenn.Code Ann. § 56–35–129; and Utah Code Ann. § 31A–20–110.

3. We note that Brown's Tie's breach of contract and breach of fiduciary duty actions remain viable in the court below and are not before this Court on the instant interlocutory appeal.

complaint to stop the sale scheduled pursuant to the second commitment, both Local and National rejected the tender of defense, even though, Brown's Tie argues, they were the cause of the delay that allowed the bankruptcy to complicate the foreclosure proceedings. However, defendants did not agree to defend such actions. The policy which was incorporated by reference into the commitments provides:

"3. **Defense and Prosecution of Actions—Notice of Claim to Be Given by an Insured Claimant.—**

"(a) The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured ... *to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy."* (Emphasis added.)

Brown's Tie reads defendants' duties too broadly. The bankruptcy action in California arose from the voluntary action of Batt in seeking bankruptcy protection, and was not litigation "... founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy." Defense of such action was not covered by the commitment or the policy. We therefore affirm the trial court's dismissal of the insurer's bad faith claim.

### III.

Next, we address the propriety of the trial court's order in limine, which excluded evidence of business losses allegedly incurred during the period of delay and also evidence purporting to establish the terms of a sale which Brown's Tie could have negotiated but for the delay.

■ These damages were properly excluded. Under general contract principles, consquential damages are not recoverable unless they were specifically contemplated by the parties at the time of contracting:

"The damages for which compensation is sought need not have been precisely and specifically foreseeable", but only *"such as were reasonably foreseeable and within the contemplation of the parties at the time they made the contract." Suitts v. First Sec. Bank of Idaho, N.A.,* 110 Idaho 15, 22, 713 P.2d 1374, 1381 (1985) (emphasis in original).

Lost profits are generally not recoverable in contract unless there is something in that contract that suggests that they were within the contemplation of the parties and are proved with reasonable certainty. *Nelson v. World Wide Lease, Inc.,* 110 Idaho 369, 378, 716 P.2d 513, 522 (Ct.App.1986).

■ Here, the parties specifically agreed upon the extent of possible liability of Local and National. The commitment for title insurance provides:

"3. Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment. *In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions,* the Exclusions from Coverage and the Conditions and Stipulations of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein." (Emphasis supplied.)

The parties, as is reflected in the commitments, did not contemplate "actual loss" to broadly encompass all damages, including lost profits, causally related to a defect in title. The insurer has agreed to compensate for actual loss incurred in clearing or

removing unexcepted encumbrances not to exceed the amount stated in Schedule A. The business success is not what has been insured, only the title. Such has been explained in Appleman's respected treatise on insurance law:

> "The purpose of title insurance is to protect a transference of real estate from the possibility of a loss through defects that may cloud the title. One of the reasonable expectations of a policyholder who purchases title insurance is to be protected against the defects in his title which appear of record. It has aptly been pointed out that a title insurance policy does not insure the value of any particular property, or even the property at all, but rather insures the title against defects that may damage the insured's interest in the property. Nevertheless, while a title insurer assumes the risk of losses due to a defective title, and distributes losses among all those subject to same risk, a policy of title insurance does not represent that the contingency insured against will not occur." 9 Appleman, Insurance Law and Practice § 5201, pp. 8–9 (1981).

We hold that under the terms of the commitments for title insurance, the subsequent policy "actual loss" does not include those damages which were the subject of the trial court's order in limine. We therefore affirm the court's exclusion of those uncontemplated damages.

The decision below is affirmed in all respects.

Costs to respondents; no attorney fees on appeal.

SHEPARD, C.J., and HUNTLEY, J., concur.

BISTLINE, J., sat, but did not participate.

DONALDSON, J., sat, but did not participate due to his untimely death.