254 N.J. Super. 380 (1992)
603 A.2d 557
WALKER ROGGE, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
CHELSEA TITLE & GUARANTY COMPANY, DEFENDANT-APPELLANT, CROSS-RESPONDENT, AND ARTHUR W. HOOD AND RONALD J. PRICE, DEFENDANTS, CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1992.
Decided March 9, 1992.
*382 Before Judges SHEBELL, SKILLMAN and D'ANNUNZIO.
Richard A. Grossman argued the cause for appellant, cross-respondent Chelsea Title & Guaranty Company (Grossman & Kruttschnitt, attorneys; Richard A. Grossman, of counsel; Thomas J. Heavey, on the brief).
Salvatore Perillo argued the cause for respondent, cross-appellant (Perillo & Rosenberger, attorneys; Salvatore Perillo, on the brief and reply brief).
Mairone, Biel, Zlotnick, Feinberg & Griffith, attorneys, filed a brief on behalf of defendant, cross-respondent Ronald J. Price (Edwin A. Paone, on the brief).
Defendant, cross-respondent Arthur W. Hood did not file a brief.
The opinion of the court was delivered by SHEBELL, J.A.D.
This matter returns to us following its remand to the Law Division pursuant to the direction of our Supreme Court in its opinion of August 9, 1989. Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 562 A.2d 208 (1989), aff'g in part and rev'g in part, 222 N.J. Super. 363, 536 A.2d 1309 (App.Div. 1988). The Supreme Court reversed the judgment against Chelsea Title & Guaranty Company (Chelsea), modified the judgment in favor of the surveyors, Arthur W. Hood and Ronald J. Price, and remanded the entire matter to the trial court to determine whether Chelsea assumed an independent duty to Walker Rogge, Inc. (Rogge) to insure the quantity of *383 acreage, whether it breached that duty, and whether plaintiff was damaged by the breach. Id. at 520, 541-42, 562 A.2d 208. The Supreme Court, while affirming the lower courts' dismissal of the negligence claims against Hood and Price, left open the issue of whether Hood and Price were liable under the certification Hood had signed on the updated 1975 survey. Id. at 542, 562 A.2d 208. The Court left to the trial judge's discretion whether the matter could be decided on the existing record or whether additional testimony was required. Id.
On remand the trial judge resolved the matter on the existing record. He concluded in a letter opinion dated September 6, 1990, that because there was no proof of negligence and because plaintiff did not pay for the oral update of an earlier survey known as the Price-Walker survey, plaintiff was not entitled to recover from the surveyors under the certification. Finding an implied covenant of good faith and fair dealing in every contract, the judge determined that Chelsea should have known about the discrepancy in acreage and should have revealed this information to plaintiff. Judgment for plaintiff in the amount of $94,336, plus interest from the date of the filing of the complaint was entered on September 17, 1990. Thereafter it was brought to the judge's attention that he had not considered the issue of plaintiff's comparative negligence. Following submission of supplemental memoranda, the judge, by letter dated November 26, 1990, determined that plaintiff had not been negligent.

I.
We refer the reader to the opinion of the Supreme Court for a detailed recitation of the pertinent facts. Id. at 521-28, 562 A.2d 208. Although the Supreme Court reversed the holding that Chelsea was liable to plaintiff under the title insurance policy, it recognized that negligence was an alternative basis on which Chelsea could be liable. Id. at 541, 562 A.2d 208.
*384 The Supreme Court held that Chelsea could be liable in negligence if the "act complained of was the direct result of duties voluntarily assumed by the insurer in addition to the mere contract to insure title." Id. (quoting Brown's Tie & Lumber Co. v. Chicago Title Co. of Idaho, 115 Idaho 56, 764 P.2d 423, 426 (1988)). The Supreme Court pointed out that, because the trial court limited plaintiff's claim to the insurance policy, the trial court had not determined whether Chelsea knew or should have known of the difference in the acreage or its materiality to the transaction. Id. Thus, the Court remanded to the trial court for determination of whether Chelsea assumed an independent duty to assure the quantity of acreage, whether it breached that duty and whether its breach damaged plaintiff. Id. 116 N.J. at 541-42, 562 A.2d 208.
On remand, the judge found that Chelsea should have known of the discrepancy in acreage between plaintiff's transaction and prior deeds and that, therefore, Chelsea was obligated to disclose the discrepancy to plaintiff under the implied covenant of good faith and fair dealing that is part of every contract. The judge found that, because "Chelsea knew by virtue of the agreement of sale" that the purchase price would be calculated based on the parcel's acreage, it had a duty to reveal to plaintiff the contradictory information set forth in earlier deeds.
Chelsea now appeals the trial court's decision. Further, Rogge cross-appeals claiming that the trial court should have found the surveyors, defendants Price and Hood, liable to it based on the surveyors' certification.
We are unable to discern from the trial judge's opinion that he considered or determined the paramount question presented on remand: Whether Chelsea voluntarily assumed any duties in addition to issuing the title policy. We agree with the trial judge that based on Chelsea's extensive files on the property, there can be no question that Chelsea knew or should have known of the acreage discrepancy. Although the trial judge concluded that Chelsea had a duty to disclose the disparity *385 of acreage between the earlier deeds and surveys and the Price survey, he appears to have premised his conclusion on erroneous factual findings. The judge relied on an implied covenant of good faith and fair dealing that is implicit in every contract, asserting that "Chelsea knew by virtue of the agreement of sale" that the acreage was material to the sale price.
We are unable to find substantial support in the record for the conclusion that Chelsea had access to the agreement of sale prior to issuing a title binder. Nor did the judge explain from what contract the implied duty arose. The Supreme Court clearly concluded that the title policy did not provide coverage and that the trial court had properly determined that Chelsea did not assume the duties of a title abstractor. Id. at 532-34, 536, 562 A.2d 208. We therefore assume that Chelsea's independent duty to plaintiff would have to arise from some other contract or obligation. Chelsea could have assumed an additional independent duty in its capacity as title closing agent; however, the parties and the trial judge do not appear to have explored this basis for liability in any detail.
Nothing in the record establishes the "settlement clerk's"[1] duties or the reasonable expectations of a buyer contracting for the services of a title closing agent in the locale in question. Rogge testified that he expected a settlement clerk to adjust the figures, make settlement between the parties and "[t]o make sure that ... the deed was in order and the description in the deed was correct...." Mr. Rogge's expectations and a settlement clerk's or closing agent's duties may be quite different things. Indeed, the title company may have undertaken greater professional and legal responsibility than permitted by law and may have thereby assumed the duty to provide the same protection as would have been provided by competent counsel. See Rocco Cammarere, Property Closings Without *386 Lawyers Cause A Stir, N.J. Lawyer, Feb. 3, 1992, at 1, 12. Plaintiff, however, provided no proof, in the form of expert opinion or otherwise, establishing these matters.
Plaintiff urges the importance of the settlement clerk's role in a "South Jersey closing," pointing out that South Jersey title companies are not only aware of their customers' expectations but market their services in such a way as to lead its customers to expect that a title company can fully represent them at closing. Plaintiff should have sought leave to offer testimony or other evidence establishing the existence and extent of such custom and usage. These are not matters of common knowledge outside of southern New Jersey and must be proved. We, therefore, reverse and remand for findings as to the liability of Chelsea in compliance with the Supreme Court's directive, as set forth in 116 N.J. at 541-42, 562 A.2d 208. The parties shall be afforded reasonable opportunity to reopen the proofs on this issue.

II.
We choose to consider at this time Chelsea's contention that the trial court erred in not finding that plaintiff was contributorily negligent by failing to obtain an attorney's services and an actual survey prior to title closing. We direct the trial judge to reconsider the issue of plaintiff's comparative negligence in the event he finds that Chelsea was negligent.
Plaintiff maintains that Chelsea waived the defense of comparative negligence because it failed to affirmatively plead it. We disagree. If an issue not raised in the pleadings is tried by consent or without objection, it will be treated as if it had been properly raised in the pleadings. R. 4:9-2. Here, Chelsea raised the defense at the end of plaintiff's case and in its summation. Plaintiff did not object to Chelsea's advancing this issue. Rather, plaintiff responded to it on its merits. Where an issue not raised in the pleadings emerges at trial, the issue will generally be permitted unless it would prejudice the other *387 party. Rivera v. Gerner, 89 N.J. 526, 537, 446 A.2d 508 (1982); Heimbach v. Mueller, 229 N.J. Super. 17, 25-26, 550 A.2d 993 (App.Div. 1988). We are satisfied that the parties actually raised and tried the issue. See 68th St. Apts., Inc. v. Lauricella, 142 N.J. Super. 546, 561 n. 3, 362 A.2d 78 (Law Div. 1976), aff'd o.b., 150 N.J. Super. 47, 374 A.2d 1222 (App.Div. 1977); Fluoro Elec. Corp. v. Smith Transp., Ltd., 58 N.J. Super. 287, 294, 156 A.2d 153 (App.Div. 1959), aff'd, 32 N.J. 277, 160 A.2d 627 (1960).
A defendant bears the burden of proving that a plaintiff is negligent and that such negligence contributed to plaintiff's damages. Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc., 53 N.J. 157, 161, 249 A.2d 382 (1969). Chelsea did not provide evidence of the duty of care applicable to a purchaser of real estate. However, the Supreme Court's opinion indicates that it is common knowledge that one who does not engage "qualified experts such as lawyers or surveyors" runs the risk of suffering possible detriment. 116 N.J. at 529, 562 A.2d 208. Thus, an issue appears to have been presented as to whether a buyer is negligent in proceeding to a title closing without an attorney and with only verbal confirmation that an existing survey was still accurate. The trial judge, therefore, must consider whether the plaintiff in these particular circumstances failed to act as a reasonable purchaser. This, of course, will be considered in the context of the practice in southern New Jersey as it pertains to title closings, and the extent of the duty assumed by Chelsea and its settlement clerk.
Chelsea must also prove that plaintiff's damages were attributable to a failure to obtain a new survey and an attorney's services. The trial judge must, however, examine the entire record, and not merely assume, as it did in its earlier ruling, that if plaintiff had obtained a new survey it would not have differed from the previous survey that Hood confirmed as accurate. A new survey may or may not have revealed the disparity in acreage depending on the cause of the original *388 error and the procedure that should properly have been followed if a new survey were ordered. Similarly, an attorney may have ordered a full title abstract and have recognized upon review the disparity between the legal descriptions in the various deeds.
Plaintiff contends that courts typically do not find contributory negligence in professional liability cases because of the professional's superior knowledge, training, and expertise. We do not find the cases plaintiff cites to be analogous to the present situation in any way. Here, the issue is whether plaintiff was negligent in not seeking appropriate professional assistance and whether that failure contributed to plaintiff's loss.

III.
We find no reason to discuss at this time the various assertions of the parties that the trial judge erred in providing prejudgment interest at the rate of 12% from October 18, 1985 to the date of judgment, except to direct the court's attention to R. 4:42-11(b).

IV.
Plaintiff appeals from the judgment in favor of defendants-surveyors, Price and Hood, arguing that they are liable under the survey certification which on its face purports to "guarantee" the accuracy of the survey. Plaintiff claims that, to recover under the certification, it need only prove that the surveyors erred. Defendant, Price, responds that liability based on a surveyor's certification must be grounded in the surveyor's negligence. Because plaintiff failed to prove the surveyors were negligent, Price argues that plaintiff cannot recover under the certification. Defendant, Hood, has not participated in this appeal.
The trial court at the first trial dismissed the negligence count against the surveyors because plaintiff failed to provide *389 expert testimony establishing that the surveyors were negligent. We affirmed, finding that, based on the evidence showing the difficulty of the surveyors' task, the trial judge acted properly in requiring expert testimony to establish negligence. Walker Rogge, 222 N.J. Super. at 375-76, 562 A.2d 208. The Supreme Court also affirmed, but noted that plaintiff had for the first time raised the issue of the surveyors' liability "under the certification signed by Hood in the updated 1975 survey" and that it was, therefore, "hardly ripe for consideration." Id. The Supreme Court directed the trial court to consider the issue on remand. Id.
According to plaintiff's brief, "Hood, an employee of the Price firm, is alleged to have certified the accuracy of the updated survey" as follows:
To: Any Insurer of Title relying hereon and any other party in interest:
In consideration of the fee paid for making this survey, I hereby certify and guarantee its accuracy (except as to such easements, if any, that may be located below the surface of the lands or on the surface of the lands if not visible) as an inducement for any insurer of title to insure the title to the lands and premises shown thereon. [Emphasis added].[[2]]
Liability premised on the surveyor's certification alone, without proof of negligence, appears to be a matter of first impression in New Jersey. Plaintiff cites a number of out-of-state cases holding surveyors liable under survey certifications where negligence has been proved. Those cases are distinguishable because here plaintiff failed to establish that the surveyors were negligent, whereas in the cases cited by plaintiff negligence had been proved. See Bell v. Jones, 523 A.2d 982, 993 (D.C.App. 1986); Hutchinson v. Dubeau, 161 Ga. App. 65, 289 S.E.2d 4, 5 (1982).
In any event, we need not reach the issue as plaintiff failed at trial to establish by competent evidence that its representative saw or relied on either the certification affixed to the 1975 *390 survey or the 1979 update. Plaintiff's president, who undertook to make arrangements for the updating of the 1975 survey, was unable to recall that he ever saw any certifications prior to the closing of title in 1979. At best his testimony established only a verbal updating of the earlier survey by telephone at the time of closing. In the absence of proof demonstrating that plaintiff relied on the certifications in proceeding to closing, we find no need to consider the legal duty imposed upon the surveyors by virtue of their certifications.
We reverse the judgment against Chelsea and remand to the Law Division. We affirm the judgment in favor of Price and Hood.
NOTES
[1] This is the title the parties have used to describe the person sent by the title company to act as its agent at closing.
[2] It appears that the certification quoted was mistakenly taken from the February 27, 1975 survey and not the update of that survey done in 1979. The 1979 update appears to merely certify and not guarantee its accuracy.