# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40793-2013

STEVEN B. CUMMINGS, )
                     )
       Plaintiff-Appellant, )
                     )
v. )
                     )
ROGER L. STEPHENS, )
                     )
       Defendant-Respondent, )
                     )
and )
                     )
NORTHERN TITLE COMPANY OF )
IDAHO, INC., an Idaho corporation, )
                     )
       Defendant-Respondent-Cross )
       Appellant. )
                     )

Boise, August 2014 Term

2014 Opinion No. 95

Filed: September 19, 2014

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, in and for Bear Lake County. Hon. David C. Nye, District Judge.

The judgment of the district court is <u>affirmed</u> in <u>part</u> and <u>reversed</u> in <u>part</u>.

Nathan M. Olsen, Petersen Moss Hall & Olsen, Idaho Falls, argued for appellant.

Randall C. Budge, Racine Olson Nye Budge & Bailey, Pocatello, argued for respondent Roger L. Stephens.

Aaron K. Bergman, Bearnson & Caldwell, Logan, Utah, argued for respondent Northern Title Company of Idaho, Inc.

_____

EISMANN, Justice.

This is an appeal out of Bear Lake County from a judgment denying the buyer of real property an award of damages against the seller and awarding the buyer a judgment against a title company that prepared an inaccurate legal description of the real property. We affirm the denial of damages against the seller and reverse the award of damages against the title company.

# I.
## Factual Background.

In 2007, Roger and Barbara Stephens owned a parcel of real property consisting of about 270 acres on the west side of the highway and another parcel consisting of about 83 acres on the east side of the highway. They held title to the property as trustees for the Roger L. and Barbara L. Stephens Family Trust. In early 2007, they engaged a realtor to sell the parcel on the west side of the highway. The realtor asked Northern Title Company of Idaho, Inc., (Northern Title) to begin the initial title work for a sale of the property, including preparing a legal description for the sale of the parcel on the west side of the highway.

While driving down the highway on July 22, 2007, Stephen B. Cummings noticed a "For Sale" sign on the Stephenses' property. The sign included the realtor's contact information, and, upon contacting the realtor, Mr. Cummings learned that the property was under contract to be sold.

The following day, Mr. Cummings was being shown other properties by another realtor, who also showed him the Stephenses' property. He then learned that the contract purchaser was Three Bar Ranches, Inc., and that the purchase price was $800,000. Mr. Cummings had the realtor contact Three Bar Ranches, and it stated that it would assign the real estate contract to Mr. Cummings for $50,000. On July 26, 2007, the realtor faxed Mr. Cummings a copy of the real estate contract and a copy of the commitment for title insurance issued in connection with the transaction. The legal description in both documents included the Stephenses' property on both sides of the highway and two additional parcels they did not own. Based upon the legal description in those documents, Mr. Cummings believed that the property being sold included both parcels of the Stephenses' property. He intended to develop the property on the east side of the highway into a recreational vehicle park, to later develop some of it into view lots, and to continue using the land on the west side of the property for agricultural purposes.

On July 30, 2007, Mr. Cummings signed an agreement to pay Three Bar Ranches the sum of $50,000 for an assignment of its interest under the real estate contract with the Stephenses. Three Bar Ranches executed the assignment agreement on August 1, 2007. In the interim, Northern Title discovered on July 31, 2007, that the legal description it had prepared for use in the real estate contract signed by Three Bar Ranches and its title commitment for that transaction erroneously included the Stephenses' real property located east of the highway and two parcels

of land they did not own. The legal description consisted of five paragraphs, each describing a separate parcel of real property. In an effort to correct that error, Northern Title created a revised legal description by inserting between the first and second paragraphs the words, "Except all of that portion of the following described land lying easterly of U.S. Highway 30." That change excluded the two parcels of property not owned by the Stephenses, but it did not exclude their land lying east of the highway because it was described in the first paragraph.

The real estate transaction between the Stephenses, as trustees of the Roger L. and Barbara L. Stevens Family Trust, and Mr. Cummings closed on August 3, 2007. On the same date, Northern Title recorded a warranty deed (Original Deed) granting to Mr. Cummings the real property described in the revised legal description, which was attached to the deed as Exhibit A. The legal description included the Stephenses' property on the east side of the highway.

On November 8, 2007, Mr. Stephens went to the county courthouse to pay the real estate taxes on the 83 acres of land east of the highway. He was informed that he no longer owned that property. He called the manager of the Northern Title office from the courthouse and told her that the legal description on the Original Deed was incorrect and that it included his land east of the highway. He then went to the Northern Title office and reiterated the problem.

The manager called the title officer, who had made the mistake, and the president of the Idaho offices of Northern Title. Northern Title still had the Original Deed with the recording information stamped on it. After being stamped with the recording information, the county recorder's office had scanned the deed for its records and returned the original to Northern Title. The title officer told the manager to correct the problem by altering the Deed and re-recording it. The manager then altered the Original Deed by typing "RE-RECORDED TO CORRECT LEGAL" on the face of the Deed and "THE FOLLOWING PARCELS ARE CONVEYED EXCEPTING THEREFROM ANY PORTION LYING EASTERLY OF U.S. HIGHWAY 30" above the legal descriptions on Exhibit A so that the exclusion applied to all five of the legal descriptions. She also crossed out the similar language that had been typed between the first and second paragraphs when it had ineffectually revised the legal description on July 31, 2007. She then re-recorded the deed (Correction Deed) on November 8, 2007. Before taking these actions, she attempted unsuccessfully to contact Mr. Cummings by telephone. Mr. Stephens did not participate in the modification of the Original Deed. On November 8, 2007, Northern Title sent

3

Mr. Cummings a policy of title insurance that insured only the property lying on the west side of the highway.

On July 29, 2009, Mr. Cummings filed this action against Mr. Stephens. He answered, denying Mr. Cummings's claims, and filed a third-party claim against Northern Title. He later dropped his third-party claim in exchange for Northern Title agreeing to indemnify him from any losses.[1]

Mr. Stephens filed a motion for summary judgment, contending that there was a mutual mistake or a unilateral mistake in the legal description of the real property being sold. The district court held that there was a genuine issue of fact regarding mutual mistake, but it granted the motion on the ground that the undisputed evidence showed a unilateral mistake. One of the realtors had filed an affidavit stating that prior to the sale he had told Mr. Cummings that only the land west of the highway was being sold, and Mr. Cummings did not deny that fact. The court stated:

> The undisputed facts, and reasonable inferences drawn from those facts, make it clear that Stephens intended to sale [sic] only land west of the highway, that Stephens did not know the warranty deed included land east of the highway, that Cummings knew that Stephens had no intent to include land east of the highway and that Cummings knew that the deed included land east of the highway. This is a unilateral mistake for which reformation is appropriate.

Mr. Cummings filed a motion for reconsideration that was supported by the affidavit of an officer of Three Bar Ranches. He stated that before Three Bar Ranches contracted to purchase the property, the same realtor had stated that the entire property on both sides of the highway was being sold. Based upon that affidavit, the district court granted the motion for reconsideration, holding that there was a genuine issue of material fact as to what Mr. Cummings had been told.

On January 4, 2011, Mr. Cummings filed his second amended complaint adding Northern Title as a defendant and alleging nine claims for relief. He alleged that by recording the Correction Deed, Mr. Stephens and Northern Title breached the warranties of title in the Original Deed, converted the 83 acres lying east of the highway, and slandered Mr. Cummings's title to the real property. He alleged that by its conduct, Northern Title breached the escrow agreement, breached the Idaho Escrow Act, breached its duty of good faith and fair dealing,

---

[1] The terms of that agreement are not in the record on appeal.

committed negligence or gross negligence, and breached the policy of title insurance.[2]  Finally, he alleged that both Mr. Stephens and Northern Title caused him emotional distress.

The matter was tried to the district court.  At the conclusion of Mr. Cummings's case in chief, the district court granted Mr. Stephens's motion for involuntary dismissal as to all of the claims against him.  After the conclusion of the trial, the court permitted Mr. Cummings and Northern Title to submit briefing.  On January 22, 2013, the court issued its written findings of fact and conclusions of law.  It denied all of Mr. Cummings's claims against Northern Title except one.  It found that Northern Title acted negligently as a title and abstract company, and it awarded Mr. Cummings damages in the sum of $50,000, which was the sum he had paid to Three Bar Ranches to obtain an assignment of its contract to purchase the Stephenses' property. The court awarded Mr. Stephens costs and attorney fees against Mr. Cummings, and it awarded Mr. Cummings costs and attorney fees against Northern Title.  Mr. Cummings appealed and Northern Title cross-appealed.

## II.
### Did the District Court Err in Dismissing Mr. Cummings's Claims Against Mr. Stephens?

This case was tried based upon the claims asserted in Mr. Cummings's second amended complaint.  With respect to Mr. Stephens, Mr. Cummings did not allege a claim for quiet title to the 83 acres on the east side of the highway, a claim to void the Correction Deed, or a claim to rescind the real estate transaction.  Instead, he alleged that Mr. Stephens had breached the warranties in the Original Deed by altering and recording the Correction Deed; that he had converted the 83 acres by executing the Correction Deed; that he had slandered Mr. Cummings's title by recording the Correction Deed; and that by his conduct he had inflicted emotional distress upon Mr. Cummings.

At the conclusion of Mr. Cummings's presentation of his evidence, Mr. Stephens moved for an involuntary dismissal on the ground that Mr. Cummings had not proved any of his claims against Mr. Stephens.  Mr. Cummings admitted that there was insufficient evidence to support the claim against Mr. Stephens for intentional infliction of emotional distress, and he stated that he had no objection to the dismissal of that claim.  With respect to the other three claims, he

---

[2] Northern Title was not the issuer of the policy of title insurance.  Stewart Title Guaranty Company was. Therefore, Northern Title was not a party to the policy and could not be liable for breaching it.

argued that Mr. Stephens was liable because he had contacted Northern Title about the error in the legal description and his doing so precipitated Northern Title's conduct in altering the Original Deed into the Correction Deed and recording it on November 7, 2007. He also argued the court should infer that Mr. Stephens asked Northern Title to take such action. The undisputed testimony was that Mr. Stephens did not participate in the modification of the Original Deed, and there was no evidence that he had asked Northern Title to take such action or that he even knew that it intended to take such action. The district court granted the motion for an involuntary dismissal on the ground that there was no evidence that Mr. Stephens altered the deed and that if any party is liable, it is Northern Title.

a. **Did the trial court make adequate findings of fact?** When a trial court grants a motion for an involuntary dismissal at the conclusion of the plaintiff's presentation of evidence, the court must make findings as provided in Rule 52(a) of the Idaho Rules of Civil Procedure. I.R.C.P. 41(b). Rule 52(a) provides, "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment . . . ." In this case, the district court orally stated its findings on the record.

Relying upon *Powers v. Tiegs*, 108 Idaho 4, 696 P.2d 855 (1985), Mr. Cummings contends that the district court's oral statement as to its findings is insufficient. In *Powers*, the trial court granted a motion for involuntary dismissal under Rule 41(b). This Court characterized it as follows, "In a one paragraph order the trial court found 'that plaintiff was at least contributorily negligent to the degree of 50 percent in the causation of injuries sustained . . . .' " *Id.* In stating that the trial court's order did not comply with Rule 52(a)'s requirement of findings of fact and conclusions of law, the Court stated:

> "Compliance with the rule of writing out specific findings and legal conclusions . . . is a salutary practice which requires the trial court to give full consideration to the entire record as the purported justification for its own announced ruling." "Bench remarks . . . do not substitute for nor rise to the dignity of written findings of fact and conclusions of law . . . ."
> In this case, the trial court's findings of fact and conclusions of law were embodied in a single paragraph. Such cursory treatment does not satisfy the requirements of I.R.C.P. 41(b) and 52(a), making appellate review virtually impossible.

6

*Id*. at 5, 696 P.2d at 856 (quoting *Sorenson v. Adams*, 98 Idaho 708, 712-13, 571 P.2d 769, 773-74 (1977)). The language in *Sorenson* would appear to require written findings of fact and conclusions of law. The Court quoted the trial court's written order, which did not include any findings of fact; stated that the trial court did not make the required findings; and explained, to provide guidance on remand, how the Court's view of the evidence differed from the trial court's oral statements.[3]

Rule 52(a) requires that the trial court "find the facts specially and state separately its conclusions of law thereon." I.R.C.P. 52(a). The rule does not require that the findings of fact and conclusions of law be in writing. Therefore, we overrule *Powers* and *Sorenson* to the extent that they indicate that the findings of fact and conclusions of law must be in writing.

Mr. Cummings also argues that the district judge's oral findings are inadequate in that they constituted a single, cursory paragraph. The trial court has the responsibility of ascertaining the facts. *Compton v. Gilmore*, 98 Idaho 190, 193, 560 P.2d 861, 864 (1977). The purpose of Rule 52(a) is to require the trial court to clearly set forth its findings of fact and conclusions of law so that it can be satisfied that it has fully and properly addressed all of the issues necessary for its decision and so that the parties, and the appellate court if there is an appeal, can be fully informed as to the bases of the trial court's decision. *Id*. at 194, 560 P.2d at 865.

---

[3] With respect to the final order, the Court stated:

> The final order or judgment in the case reads as follows:
>> "Plaintiffs rested.
>> "Defendants moved for non-suit on the grounds of failure to prove fraud against these defendants. Said motion was granted by the Court, the Court finding that as a matter of fact and matter of law, no fraud had been proven. Plaintiffs thereafter moved to amend on the grounds of mutual mistake of fact, with objections being voiced by defendants.
>> "IT IS HEREBY ORDERED that defendants' motion for non-suit, be and the same is hereby granted."

*Sorenson*, 98 Idaho at 711 n.1, 571 P.2d at 772.

> The Court later stated that the trial court had carefully explained orally the basis of its ruling:

>> The defendants' contention that the trial court made the requisite findings can not be sustained. Nonetheless, the trial judge did carefully explain the *ratio decidendi* of his conclusion to grant the motion, and he stated his belief that all witnesses had testified truthfully. . . . For the limited purpose of providing guidance on remand, we point out briefly wherein our views differ from those orally expressed by the trial court in passing upon the motion. We have the benefit of the recorded testimony and considerably more time than was available to the trial court.

*Id*. at 713, 571 P.2d at 774.

The extent of the findings of fact and conclusions of law necessary for meaningful appellate review depends upon the nature of the issue to be decided by the trial court. *Browning v. Ringel*, 134 Idaho 6, 16, 995 P.2d 351, 361 (2000). In this case, the crux of Mr. Cummings's claims against Mr. Stephens was that he had altered the Original Deed into the Correction Deed and had then recorded the Correction Deed. In its oral pronouncement, the district court found that there was no evidence that Mr. Stephens had done so and that absent such evidence there was no basis for holding him liable. The court's finding and conclusion sufficiently addressed that issue.

**b. Did the district court err in granting the motion for involuntary dismissal?**
"[W]hen a defendant moves for an involuntary dismissal at the close of the plaintiff's presentation in a non-jury case, the court sits as a trier of fact and is not required to construe all evidence and inferences to be drawn therefrom in the light most favorable to the plaintiff." *Keenan v. Brooks*, 100 Idaho 823, 825, 606 P.2d 473, 475 (1980). The trial court "is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." *Id*. A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002); I.R.C.P. 52(a). "When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court. It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses." *Miller v. St. Alphonsus Reg'l Med. Ctr., Inc*., 139 Idaho 825, 832, 87 P.3d 934, 941 (2004) (citation omitted). "Factual findings are not clearly erroneous if they are supported by substantial and competent evidence, which is evidence that a reasonable trier of fact could accept and rely upon in determining that such facts had been proved." *VanderWal v. Albar, Inc.*, 154 Idaho 816, 821, 303 P.3d 175, 180 (2013).

In order to prove that Mr. Stephens created and recorded the Correction Deed, Mr. Cummings only offered the testimony of the manager of Northern Title. She stated that she altered the Original Deed into the Correction Deed after discussing the matter with the title officer, who had made the error, and the regional president of Northern Title. The title officer assured the manager that she should change the header above the warranty deed to read "re-recorded to correct the legal" and place the exclusionary language at the very top of the legal description. The manager testified that after unsuccessfully attempting to contact Mr. Cummings

by telephone, she made those changes to the Original Deed, went to the courthouse, and re-recorded it.

The manager also testified that Mr. Stephens did not participate in the modification. In fact, there was no evidence that he was even present when those changes were made or knew that they were to be made. His only conduct to which the manager testified was that he informed her of the error in the legal description. There was no other testimony or evidence as to his conduct in connection with the modification of the Original Deed and re-recording it as the Correction Deed. The recorder's stamp shows that it was re-recorded at the request of Northern Title. The evidence was sufficient for the district court to find that Mr. Cummings had failed to prove his claims against Mr. Stephens.

On appeal, Mr. Cummings argues that "this ruling was made without any actual testimony from Roger Stephens, and without the testimony from any of the realtors." A motion for involuntary dismissal can be made "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence." I.R.C.P. 41(b). Before resting, Mr. Cummings did not call either Mr. Stephens or the realtors to testify. The court can decide the motion based upon the evidence presented during the plaintiff's case in chief.

**c. Did the district court err in failing to uphold the Original Deed?** Mr. Cummings argues on appeal that the district court erred in failing to uphold the Original Deed. He argues that the Original Deed unambiguously conveyed to him the Stephenses' property located on both sides of the highway; that Mr. Stephens had the burden of proving unilateral mistake by clear and convincing evidence in order to reform the deed; that Mr. Stephens did not present sufficient evidence to do so; and that the district court erred by ruling that Mr. Stephens had proved unilateral mistake.

This argument is based upon a misunderstanding of the proceedings. As stated above, the issues of mutual and unilateral mistake were raised by Mr. Stephens in his motion for summary judgment, but the district court ultimately denied the motion. Therefore, this case went to trial on the issues raised in the pleadings. The district court did not grant Mr. Stephens's motion for involuntary dismissal on the ground of unilateral mistake. In its recitation of what the facts showed, the district court did state that Mr. Stephens did not intend to sell that portion of the property on the east side of the highway, but that was just to put in context the error made by Northern Title and its actions to correct that error. The court stated:

9

In weighing the evidence, it seems very clear to me that Stephens had no intention to sell the property east of the highway; that Stephens never authorized the sale of the property east of the highway; that both the real estate agents and the title company understood and knew that Stephens was not selling property east of the highway.

The title company admitted on the stand that it made a mistake in the deed language and made a mistake twice, and that that mistake included land Stephens did not intend to sell.

There's no evidence that Stephens altered the deed either the first or second time. . . .

The district court did not make any ruling regarding the validity of the Original Deed. It dismissed the claims against Mr. Stephens simply because Mr. Cummings failed to prove his allegations that Mr. Stephens had created and recorded the Correction Deed.

**d. Did the district court err in failing to quiet Mr. Cummings's title in the land east of the highway?** Mr. Cummings contends on appeal that the district court erred in holding that it could not award the property east of the highway to Mr. Cummings. During his cross-examination, Mr. Cummings was asked whether he wanted the land. He replied, "Not at this point." He was then asked what he was seeking from the court, and he answered, "For me, I would collect on the policy and move on with my life."

In announcing its decision to grant Mr. Stephens's motion for involuntary dismissal, the district court stated that any liability lies with Northern Title. It then stated, "And I understand that creates a problem when it comes to remedies as far as the actual real property itself, but Mr. Cummings abandoned that remedy on the stand." Mr. Cummings did not dispute that statement when it was made. In fact, the following exchange occurred:

THE COURT: [M]y notes showed that when he was on the stand, Mr. Cummings said, "I don't want that east side anymore. I want monetary damages." And I think he was speaking specifically of the $850,000 under the policy.

MR. OLSEN [Cummings's attorney]: Yeah, I think he said that. And then I also offered some testimony of "What do you want," you know, the benefit of your bargain. I guess you could look at benefit of the bargain as either being— you know, reducing the amount he would have had to pay without the 83 [acres], or you could construe it as, you know, "Just give me the property back." Yeah, but I would say, you know, based on Mr. Cummings's testimony probably leaning more towards, you know, "Just pay me some damages, and let's move on." I think that might have been his exact words, actually.

THE COURT: I think so, too.

MR. OLSEN: Yeah, so—

10

In its findings of fact, the district court stated that "Cummings did not provide any evidence regarding the value of the property on the east side of the highway." Now, after the trial concluded with the court holding that Mr. Cummings had failed to prove damages regarding the value of the 83 acres, he contends that the court misconstrued his statement. The district court did not misconstrue Mr. Cummings's testimony. More importantly, however, Mr. Cummings did not assert any claim for quiet title to the 83 acres or to void the Correction Deed. Therefore, the issue of whether title in the property should have been quieted in Mr. Cummings was not an issue raised by the pleadings. In addition, as will be discussed below, the district court also found, when addressing Mr. Cummings's slander of title claim, that he had failed to prove that the transaction between him and Mr. Stephens included the sale of the property on the east side of the highway.

Mr. Cummings also challenges the district court's statement that he may have failed to sue the correct parties. The title to the land was held in the names of Roger L. Stephens and Barbara L. Stephens, Trustees of The Roger L. And Barbara L. Stephens Family Trust. During the argument on Mr. Stephens's motion to dismiss, the court pointed out that Mr. Cummings had sued Mr. Stephens in his individual capacity and had not sued Mr. and Mrs. Stephens in their capacities as trustees of the trust. The court asked Mr. Cummings's counsel how it could award damages against the trust.[4] However, the court did not grant the motion for involuntary dismissal on that ground. Therefore, that discussion had no bearing on the court's decision to grant Mr. Stephens's motion for involuntary dismissal.

## III.
### Did the District Court Err in Deciding that Mr. Stephens Was the Prevailing Party With Respect to the Claims Asserted Against Him?

The district court determined that Mr. Stephens was the prevailing party with respect to the claims asserted against him by Mr. Cummings. It therefore awarded him court costs, including reasonable attorney fees. Mr. Cummings contends on appeal that the court erred in determining that Mr. Stephens was the prevailing party. He writes, "In determining whether a

---

[4] "Under Idaho law, a trust is not a separate legal entity; rather, a trust is no being at all." *Indian Springs LLC v. Indian Springs Land Inv., LLC*, 147 Idaho 737, 745, 215 P.3d 457, 465 (2009). The issue would have been whether damages recoverable against Mr. Stephens for conduct in his individual capacity could have been collected from property subject to the trust.

11

party should be awarded costs, the court must conduct an analysis of whether the party truly prevailed, and (of particular relevance to this case) must consider the 'final judgment or result of the action in relation to the relief sought by the respective parties.' "

Rule 54(d)(1)(B) of the Idaho Rules of Civil Procedure states, "In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties." "The determination of who is a prevailing party is committed to the sound discretion of the trial court, and we will not disturb that determination absent an abuse of discretion." *Bream v. Benscoter*, 139 Idaho 364, 368, 79 P.3d 723, 727 (2003). When we are asked to decide whether a trial court abused its discretion, this Court considers:

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Advanced Med. Diagnostics, LLC v. Imaging Ctr. of Idaho, LLC*, 154 Idaho 812, 814, 303 P.3d 171, 173 (2013).

Mr. Cummings asserts, "In considering all of the circumstances and claims in this case, Cummings should not have to pay Stephens his fees and costs as the 'prevailing party.' " He gives three reasons for that assertion.

First, he states, "The net effect of the trial court's decision is that Stephens is able to hold onto property that Northern Title included in an improperly altered and rerecorded warranty deed. In other words, Stephens will have benefitted notwithstanding Northern Title's improper conduct." Mr. Cummings did not file any claim against Mr. Stephens to quiet Mr. Cummings's title in the 83 acres or to have the Correction Deed declared void. He could have joined those claims with the ones he brought against Mr. Stephens, but he chose not to do so. He only sought to recover monetary damages against Mr. Stephens. That Mr. Stephens will retain the 83 acres is not a reason to hold that he is not the prevailing party in this action. He obtained a dismissal with prejudice of all claims actually brought against him.

Second, Mr. Cummings states that he should not have to pay Mr. Stephens's attorney fees because they were incurred due to Northern Title's wrongdoing. Mr. Cummings argued to the district court that Mr. Stephens should not be the prevailing party because "the Court dismissed Stephens only because it held that any wrongs that harmed Cummings were not committed by

12

Stephens. Cummings should not have to suffer the costs and expenses incurred by Stephens because of another party's failure." In responding to that argument, the district court wrote that "the simple truth is that the Court dismissed Stephens because he did nothing wrong and owed no liability to Cummings. Stephens should not have to suffer costs and expenses because Cummings failed to recognize that Northern Title was the only culpable party that he sued."

Finally, Mr. Cummings states that he should not have to pay Mr. Stephens attorney fees because Northern Title has agreed to indemnify him. In his amended memorandum objecting to Mr. Stephens's request for an award of attorney fees, Mr. Cummings wrote, "Both Cummings and Stephens were successful in passing on liability to their escrow and title agent Northern Title, who was solely held responsible for the wrongs committed in this case." He added, "The essence of Stephens' argument is that he is not to blame for harms done to Cummings, but rather it belonged to Northern Title, who has agreed to indemnify him." In responding to that statement, the district court wrote:

> Cummings also argues that Stephens did not prevail against Cummings but merely succeeded in passing liability to Northern Title, who already agreed to indemnify Stephens. However, an agreement to indemnify is simply a contractual obligation between the parties to the contract. It has nothing to do with a non-contracting party. Cummings has no right to rely on the agreement to indemnify and cannot use it as a shield against a claim of attorney fees brought by Stephens. Put another way, a Plaintiff is not insulated from a claim of attorney fees by the prevailing party simply because the prevailing party obtained an agreement of indemnification from the actual culpable party.

Mr. Cummings has not provided any authority for the proposition that a party who will be indemnified for any losses in a lawsuit cannot be the prevailing party in the lawsuit when all claims against him are dismissed with prejudice. Mr. Cummings has not shown that the district court abused its discretion in finding that Mr. Stephens was the prevailing party regarding the claims brought against him by Mr. Cummings.


### IV.
### Did the District Court Err in Failing to Recognize a Tort of Bad Faith in This Case?

This Court has created a tort of bad faith applicable to insurance companies. That tort is not a tortious breach of contract, but a breach of a duty imposed as a consequence of a contractual relationship. *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 97, 730 P.2d 1014, 1017

13

(1986).  To recover against an insurance company on the tort of bad faith, the insured must show:  (1) the insurer intentionally and unreasonably denied or delayed payment; (2) the insured's claim was not fairly debatable; (3) the insurer's denial or delay was not the result of good faith mistake; and (4) the resulting harm was not fully compensable by contract damages. *Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 48, 72 P.3d 877, 888 (2003).

Mr. Cummings filed a claim against Northern Title seeking to recover for breach of its duty of good faith and fair dealing.  He argued to the district court that it should create a similar claim against escrow companies.  He proposed that the tort of bad faith against an escrow agent have the following elements:

> "Intentionally and unreasonable denial" of a claim brought by the insured to complete the transaction according to the contract or escrow instructions may be compared with "intentional and unreasonable denial or withholding of payment" (of a claim).  Moreover, when issues regarding the escrow services are brought to the attention of the company, the Court can either determine whether the escrow company adequately investigated the claim to determine whether it is "fairly debatable," and second, and/or decide that escrow agent's failure to perform certain duties makes the claim not "debatable."  In addition, an escrow agency's failure to properly conduct the transaction should not be "the result of a good faith mistake."  Finally, the Court can consider whether the "resulting harm is not fully compensable by contract damages."

Although the district court held that there was not a tort of bad faith against an escrow agent, it did address whether Northern Title committed bad faith by "colluding" with Mr. Stephens rather than paying the claim asserted by Mr. Cummings.  The court found that Northern Title acted in good faith in failing to pay Mr. Cummings's claim, stating:  "Northern Title had the understanding all along that the sale was to include only that property on the west side of Highway 30.  Northern Title therefore contested Cummings's claims in good faith."  The court also found that Mr. Cummings had failed to prove that Northern Title intentionally and unreasonably denied or withheld payment.  It found:  "Cummings has failed to convince this Court that Northern Title's denial was unreasonable.  Northern Title's information was that Cummings only received property on the west side of Highway 30.  When Northern Title denied Cummings payment it was not unreasonable."  (Footnote omitted.)  The court also found that Mr. Cummings's claim against Northern Title was fairly debatable.  Mr. Cummings argued that an e-mail showed that his claim was not fairly debatable.  The court held that Mr. Cummings was misconstruing the e-mail, and it then concluded:  "This email addresses the authorization of

14

Northern Title to rerecord the warranty deed. It was testified extensively at trial that Northern Title's understanding was that only the property on the west side was involved in the transaction." Next, the court addressed whether Northern Title acted in bad faith in denying Mr. Cummings's claim. The court held that Mr. Cummings had failed to prove bad faith, stating, "The bad faith claim has failed for the reasons explained above, and the Court will not take up whether the denial to pay was the result of a good faith mistake, except to say that Plaintiff has offered nothing to prove this point."

Mr. Cummings has not challenged any of these factual findings on appeal. Thus, even if this Court were to adopt the bad faith tort as requested by Mr. Cummings, he would not prevail on that claim. Therefore, we need not address the issue of whether we should adopt such a tort.

## V.
### Did the District Court Err in Preventing Mr. Cummings's Expert from Testifying Due to Mr. Cummings's Violation of the Scheduling Order?

On January 27, 2012, the district court entered a scheduling order setting this case for trial to commence on July 31, 2012. The order included a discovery cut-off of June 2, 2012. It required Mr. Cummings to disclose expert witnesses 140 days before trial (by March 13, 2012) and Northern Title to disclose its expert witnesses 105 days before trial (by April 17, 2012). The order required the disclosures to be in the manner and specificity required by Idaho Rule of Civil Procedure 26(b)(4)(A)(i). That rule stated:

> A complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; any qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

I.R.C.P. 26(b)(4)(A)(i) (2012).

The scheduling order also included the statement, "Witnesses not disclosed in responses to discovery and/or as required herein will be excluded at trial, unless allowed by the Court in the interest of justice." Both Mr. Cummings and Northern Title intended to have expert witnesses testify as to the value of the 83 acres.

On June 20, 2012, Mr. Cummings filed a motion to exclude Northern Title's expert on the ground that Northern Title had failed to comply with the scheduling order by timely disclosing the information required by Rule 26(b)(4)(A)(i). The information was due on April 17, 2012, but Northern Title did not provide it until June 14, 2012, when it gave Mr. Cummings a copy of its expert's report. The motion was argued on July 3, 2012, and on July 6, 2012, the court entered its order granting the motion on the ground that Northern Title's disclosure prior to the deadline of April 17, 2012, did not meet the requirements of Rule 26(b)(4)(A)(i) and Northern Title had not shown that it was in the interest of justice to permit an untimely disclosure.

On July 2, 2012, Northern Title moved to exclude Mr. Cummings's expert on the ground that Mr. Cummings had also failed to comply with the court's scheduling order with respect to the specificity required by Rule 26(b)(4)(A)(i). That motion was argued on July 17, 2012. The information was required to be disclosed by March 13, 2012, but Mr. Cummings did not provide it until June 14, 2012, when he gave Northern Title a copy of his expert's report. His excuse for failing to provide the information sooner was that the expert did not provide a written report until that date. At the conclusion of the hearing, the court ordered that Mr. Cummings's expert was likewise excluded from testifying because Mr. Cummings did not comply with the scheduling order by disclosing the material required by Rule 26(b)(4)(A)(i) by his deadline of March 13, 2012. The court added that if the parties desired, they could work out a stipulation permitting both experts to testify.

On July 24, 2012, Mr. Cummings filed a motion asking the court to reconsider its order excluding Mr. Cummings's expert from testifying. That motion was heard on July 30, 2012, the day before the start of the trial. Mr. Cummings argued that he would be more prejudiced not to have his expert witness testify than Northern Title would be prejudiced by not having its expert witness testify. The court denied the motion.

"Exclusion of testimony based on late disclosure is a sanction under I.R.C.P. 37(b), and is subject to an abuse of discretion review." *Bramwell v. S. Rigby Canal Co.*, 136 Idaho 648, 651, 39 P.3d 588, 591 (2001). "To determine if there has been an abuse of discretion, this Court applies the following three factors: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3)

16

whether the trial court reached its decision by an exercise of reason." *City of McCall v. Seubert*, 142 Idaho 580, 586, 130 P.3d 1118, 1124 (2006).

The district court correctly perceived that its decision to exclude Mr. Cummings's expert was a matter of discretion, it acted within the boundaries of its discretion, and it reached its decision by an exercise of reason. Mr. Cummings contends that the court did not act consistent with the applicable legal standards because it did not balance the equities.

He argues that Northern Title had its expert's report in its possession some time before it disclosed the report on June 14, 2012, while Mr. Cummings did not receive his expert's report until June 14, 2012, when he disclosed it. Mr. Cummings was required to disclose the information required by Rule 26(b)(4)(A)(i) by March 13, 2012. There is no reason shown why the report was not obtained early enough to be timely disclosed. As a practical matter, there is no difference between being derelict in providing a report timely to the opposing party after it has been received and being derelict in failing to have the expert complete the report so it could be provided timely to the opposing party. In either circumstance, the opposing party will not receive the report by the deadline set forth in the scheduling order.

At the motion to exclude Northern Title's expert, Mr. Cummings argued that "it's highly prejudicial when expert disclosures get filed late, and particularly when there's no excuse for doing so." The same argument applied to his late disclosure. The district court imposed the same sanction for Mr. Cummings's late disclosure as it imposed, at Mr. Cummings's request, for Northern Title's late disclosure. If anything, Mr. Cummings was more dilatory for the late disclosure because his disclosure was about three months late while Northern Title's disclosure was about two months late.

At the hearing on the motion to reconsider held on July 30, 2012, the court asked Northern Title what prejudice there would be if both experts were permitted to testify. Northern Title answered that it had released its expert, and therefore it had not had its expert prepare a report to respond to the opinion of Mr. Cummings's expert. That is not surprising since the court had excluded Northern Title's expert on July 6, 2012.

Mr. Cummings argues that it is more prejudicial for him to be deprived of his expert on valuation than for Northern Title to be deprived of its expert on the same subject. He does not provide any logical reason supporting that statement.

17

In its scheduling order, the district court clearly set forth what it required with respect to the disclosure of information concerning an expert's testimony. The court also admonished the parties that "[w]itnesses not disclosed in responses to discovery and/or as required herein will be excluded at trial, unless allowed by the Court in the interest of justice." Mr. Cummings was over three months late in providing the required disclosures, and he did not provide any legitimate reason for violating the order. In excluding Mr. Cummings's expert witness from testifying, the district court acted in a manner that was consistent with the applicable legal standards. *Aguilar v. Coonrod*, 151 Idaho 642, 647, 262 P.3d 671, 676 (2011); *Bramwell*, 136 Idaho at 652, 39 P.3d at 592.

## VI.
## Did the District Court Err in Failing to Award Mr. Cummings Additional Damages?

The district court awarded Mr. Cummings $50,000, the amount he paid to Three Bar Ranches for an assignment of its contract to purchase the Stephenses' property. Mr. Cummings argues on appeal that the court erred in not awarding him additional damages. He contends that if the Stephenses retain the 83 acres, then he should have been awarded the value of the 83 acres and benefits received for the land being in the Conservation Reserve Program (CRP). He begins by stating, "Cummings's post trial brief set forth a number of consequential and proximate damages suffered as a result of Northern Title's misconduct." He then states that the damages listed in his post-trial brief included, "[a]mong other damages listed, . . . being deprived of the 83 acres lying on the east side of the highway and any foreseeable income that was generated from that property, i.e. the CRP funds." After stating the amount of those funds, he concludes, "Cummings proposed value of the lost property was also covered in detail in the brief."

Idaho Appellate Rule 35(a)(6) provides that the appellant's brief shall contain, in the argument section, "the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." "We will not consider assignments of error not supported by argument and authority in the opening brief." *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006). Merely referring this Court to the party's brief filed in the trial court does not comply with Rule 35(a)(6).

18

In addition, the district court found that the Mr. Cummings failed to prove that the agreement between him and Mr. Stephens included the sale of the Stephenses' property on the east side of the highway. In denying those damages, the district court found as follows:

> The Court is convinced that the property on the east side of the highway was never intended to be sold by Stephens. Cummings was therefore never entitled to receive this property. As Cummings was never the true owner of the property on the east side of the highway, Cummings has no claim over that property, value of that property, or any interest generated from that property in the form of CRP payments or otherwise. Additionally, Cummings did not provide any evidence regarding the value of the property on the east side of the highway.

Thus, the district court found that "Cummings was never the true owner of the property on the east side of the highway" and that he "has no claim over that property, value of that property, or any interest generated from that property in the form of CRP payments or otherwise." The court found as an alternative finding that Mr. Cummings did not prove the value of the 83 acres on the east side of the highway.

With respect to Mr. Cummings's claim for slander of title, the district court found that the transaction between Mr. Cummings and Mr. Stephens did not include the sale of land on the east side of the highway. The court found as follows:

> The Court is not convinced that Cummings has met his burden of proving that the November 8 rerecorded deed is a false statement. There was considerable disagreement on whether or not the real estate transaction entered into between Cummings and Stephens included property east of Highway 30. The Court does not believe that Cummings has sufficiently met his burden in proving that the transaction did in fact include property east of Highway 30. Since the real estate deal did not include property east of Highway 30, the rerecorded deed that excluded property on the east side of Highway 30 is not a false statement.

The district court's conclusions of law included the following:

> Cummings has not met his burden of proof in showing that the November 8, 2007, Warranty Deed is a false statement.
> . . . .
> Cummings is not entitled to any of the Stephens' property on the east side of the highway.
> Cummings has no right to recover any property, value, or interest for the Stephens' property located on the east side of the highway.

Mr. Cummings does not challenge the above-quoted findings of fact and conclusions of law. He mentions the first finding quoted above by merely stating that "the trial court made the

19

rather curious decision that because Stephens never 'intended' to sell the east side property, that Cummings was never entitled to the value of that property." He does not even mention the second finding or conclusions of law quoted above.

There was evidence that the two realtors involved had informed Mr. Cummings that the property for sale was on the west side of the highway before he contracted to buy it. The listing realtor testified in her deposition, which was published during the trial, that she was contacted by Mr. Cummings about the Stephenses' property and that she drove him to the property and showed him the property on the west side of the highway, which included the house. She stated that he asked if there was any other property for sale, and she answered that the property on the west side was all there was and that the Stephenses owned property on the east side of the highway, but it was in a trust. She stated that she did not want to drive her car into the fields, so she drove him back to her office to see if the other realtor who was working with her could take them back to the property in his pickup. He was at the office with his wife, and they all went to the property. That realtor testified that he had previously shown Mr. Cummings the property and had given him a sketch showing that the property consisted of 330 acres. He stated that during this visit to the property, he told Mr. Cummings it was 270 acres for sale, not 330 acres.

The district court found that Mr. Cummings had failed to prove that the agreement he had reached to purchase the Stephenses' property included the property on the east side of the highway. Mr. Cummings did not challenge that finding on appeal. Therefore, the district court did not err in failing to award him additional damages.

## VII.

### Did the District Court Err in Failing to Award Mr. Cummings Punitive Damages?

Mr. Cummings contends that the district court erred in failing to award him punitive damages. A party seeking to recover punitive damages "must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." I.C. § 6-1604(1). In order to recover punitive damages, the party seeking them must first obtain a court order permitting the party to amend the party's pleading to include a prayer for relief seeking punitive damages. I.C. § 6-1604(2). If such a motion is made, "[t]he court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a

20

reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *Id.* "A trial court's ruling on a motion to amend a complaint to add a claim for punitive damages is reviewed for an abuse of discretion." *Weinstein v. Prudential Prop. and Cas. Ins. Co.*, 149 Idaho 299, 311, 233 P.3d 1221, 1233 (2010).

On July 3, 2012, Mr. Cummings filed a pretrial motion seeking permission to amend his complaint to seek an award of punitive damages. That motion was heard on July 17, 2012, and the court denied the motion without prejudice. It then stated to Mr. Cummings's counsel, "[I]f at trial there's additional evidence that comes up that I'm not aware of and you want to renew your motion, you can do that."

Mr. Cummings contends that the district court abused its discretion in denying his motion to amend his second amended complaint to include a request for punitive damages. He supports his argument with evidence admitted during the trial and the court's factual findings.[5]

The district court denied Mr. Cummings's motion without prejudice and told him that he could renew the motion if there was additional evidence at trial supporting the claim. Mr. Cummings rested his case-in-chief without renewing the motion. After he rested, Northern Title stated that Mr. Cummings had not established a justification for punitive damages. The district court responded, "There is no punitive damages in this case; I didn't grant the motion to allow them in." Mr. Cummings did not at that point renew his motion, nor did he ever renew it.[6] Therefore, he waived any claim that he should be permitted to amend his complaint to request an award of punitive damages.

---

[5] Mr. Cummings relies upon the district court's findings that Northern Title's conduct in failing to obtain Mr. Cummings's consent before altering the legal description of the deed and re-recording it constituted "gross negligence, willful misconduct, or both." He contends that those findings support the awarding of punitive damages, citing *Kuhn v. Coldwell Banker Landmark, Inc.*, 150 Idaho 240, 254, 245 P.3d 992, 1006 (2010). In *Kuhn*, this Court included a quotation from *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 905, 665 P.2d 661, 669 (1983), wherein this Court had stated that punitive damages were justified where the defendant's state of mind could be termed "gross negligence" or "simply 'deliberate or willful.' " *Id. Cheney* was decided in 1983, and in 1987 the legislature enacted Idaho Code section 6-1604. Ch. 278, § 1, 1987 Idaho Sess. Laws 571, 576. That statute limits the award of punitive damages to situations in which there was "oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." I.C. § 6-1604(1). Since the enactment of the statute, gross negligence or deliberate or willful conduct is not sufficient for an award of punitive damages. The district court's findings did not include any statement that Northern Title's conduct was oppressive or fraudulent, and the court specifically found that its conduct was neither malicious nor outrageous.

[6] Idaho Code section 6-1604(2) requires "a pretrial motion" to amend the pleadings to seek punitive damages. Because the issue has not been raised on appeal, we express no opinion as to whether renewing a motion during trial complies with the requirement of a pretrial motion.

# VIII.
## Did the District Court Err in Finding Northern Title Liable As an Abstractor of Title?

Northern Title cross-appealed the district court's award of damages against it in the sum of $50,000. Prior to there being any buyer for the property, the Stephenses' realtor had asked Northern Title to prepare a legal description for the property to be sold, which Northern Title knew was to be only the Stephenses' property that was located on the west side of the highway. Northern Title prepared an erroneous legal description that included all of the Stephenses' property, plus property they did not own. That legal description was used in the real estate contract dated July 2, 2007, under which the Stephenses agreed to sell the property to Three Bar Ranches for $800,000 and in the title insurance commitment that Northern Title issued to Three Bar Ranches. On July 22, 2007, Mr. Cummings became interested in the Stephenses' property, and the following day he learned that Three Bar Ranches would assign the real estate contract to him for $50,000. On July 23, 2007, he received copies of the contract and the commitment for title insurance, both of which had the erroneous legal description prepared by Northern Title. The district court found that he "used this legal description as part of his basis in believing that he was entering into a transaction that included the entire Stephens Ranch, both property on the east and west sides of the highway."

The district court concluded, "As a title and abstract company, Northern Title acted negligently with regards to Cummings." With respect to its liability as an abstract company, the court stated:

> The failure on the part of Northern Title to use ordinary care resulted in the proximate harm of Cummings. Cummings used the erroneous legal description contained in the title commitment to do a cursory review of the Stephens property and used this legal description as part of his basis in believing that he was entering into a transaction that included the entire Stephens Ranch. Northern Title's failure in exercising ordinary care in the preparation of the legal description used in the transaction caused Cummings to become injured because he believed that he was entering into a transaction that included property that was not supposed to be included. Northern Title is therefore negligent as a title and abstract company insofar as it did not use ordinary care in the preparation of the legal description to be used in the real estate deal between Stephens and Cummings.

Based upon that negligence, the district court found that Northern Title was liable for the $50,000 that Mr. Cummings paid Three Bar Ranches for the assignment of the real estate contract. The court stated the basis of that award as follows:

> Cummings was willing to pay an additional $50,000 and purchase an assignment from the Baums [owners of Three Bar Ranches] in order to purchase what he believed was the entire Stephens ranch situated on both sides of the highway. This belief came based upon the negligent preparation of the legal description by Northern Title that identified land on the east side of the highway. The only harm that the Court can conclude that is outside the realm of speculation is that Cummings has been proximately harmed by this negligence in an amount of $50,000.

The district court confused the statutory requirement that a title insurance agent have abstract records with the agent being an abstract company. It wrote that an agent of a title insurance company is required by Idaho Code section 41-2710 to have " 'a complete set of tract indexes and abstract records of each county for which policies are written and authorized.' Northern Title has been licensed as a title agent in Idaho." The court later concluded:

> This case presents considerable confusion because Northern Title wore several "different hats" in relation to the events in question. Northern Title acted as the escrow agent, title insurance agent, and title and abstract company. Usually, "[t]he title insurance agent sells title insurance, collects the premiums, and issues or countersigns policies for the insurance company." The "agent is usually a title and abstract company which provides assorted services to its clients, such as selling title insurance, researching the title for that insurance, surveying the realty, and 'closing' through escrow agents."

The quotation in the last sentence quoted above is from *Cameron County Savings Ass'n v. Stewart Title Guaranty Co.*, 819 S.W.2d 600, 602 (Tex. Ct. App. 1991). The Texas court did not hold that a title insurance company was liable as an abstractor of title. In fact, that was not even an issue in the case. As stated by the Supreme Court of Texas:

> A title insurance policy is a contract of indemnity. In other words, the only duty imposed by a title insurance policy is the duty to indemnify the insured against losses caused by defects in title. Thus, Chicago Title's issuance of a policy did not constitute a representation regarding the status of the property's title; rather, it constituted an agreement to indemnify the McDaniels against losses caused by any defects.

*Chicago Title Ins. v. McDaniel,* 875 S.W.2d 310, 311 (Tex. 1994) (citations omitted). Likewise, "A title insurance policy is a contract of indemnity, and the only duty imposed by a title

23

insurance policy is the duty to indemnify the insured against losses caused by defects in title. A title insurance company, like American Title, is not a title abstractor and owes no duty to examine title." *Hahn v. Love*, 394 S.W.3d 14, 35 (Tex. Ct. App. 2012) (citations omitted).

A title insurance company is not an abstractor of title. As this Court stated in *Hillock v. Idaho Title & Trust Co.*, 22 Idaho 440, 126 P. 612 (1912), a contract to purchase an abstract of title is "an application to purchase an abstract of title covering all instruments and conveyances and incumbrances affecting the title to the property or all such instruments and records affecting the title in some given particular, as, for instance, incumbrances, tax titles, or judgment liens, or mechanic's and laboring men's liens." *Id.* at 446, 126 P. at 614.

> The abstractor's obligation is to make a full and true search and examination of the records relating to or affecting the title of the land in question, and to prepare an abstract thereof, covering the desired period of time, noting accurately every transfer, conveyance, encumbrance, judicial proceeding and other instrument of record in any way affecting the title, within the period to be covered.

1 Am. Jur. 2d *Abstracts of Title* § 11 (2005) (footnotes omitted). The liability of the abstractor depends upon the representations made in the certificate attached to the abstract. *Hillock*, 22 Idaho at 446, 126 P. at 612. "An abstract should disclose everything material concerning the sources and conditions of the title to the property in question. It should show, with exactness, the status of the title as of the time the abstract is made, or as near thereto as is possible in the ordinary transactions of business." 1 Am. Jur. 2d *Abstracts of Title* § 14 (2005) (footnotes omitted). For example, if the certificate represented that the abstract included all tax deeds and it failed to disclose and report an outstanding tax deed, the abstractor would be liable to someone who was damaged by relying upon it because the certificate would include a false representation. *Hillock*, 22 Idaho at 446-47, 126 P. at 614. An abstractor's liability is not based upon privity of contract with the person injured. *Merrill v. Fremont Abstract Co.*, 39 Idaho 238, 244-45, 227 P. 34, 36 (1924). An abstractor may be liable for "any or all damages that may accrue to any party or parties, by reason of any error, deficiency or mistake in any abstract or certificate of title, made and issued by such person or persons." I.C. § 54-101.

Title insurance "is the certification or guarantee of title or ownership, or insurance of owners of property or others having an interest therein or liens or encumbrances thereon, against loss by encumbrance, or defective titles, or invalidity, or adverse claim to title." I.C. § 41-

508(1). Title insurance does not include "the business of preparing and issuing abstracts of, but not certifying, guaranteeing, or insuring, title to or ownership of property or certifying to the validity of documents relative to such title." *Id*. Title insurers do not have a duty to conduct a reasonable search of title before issuing a policy. *Brown's Tie & Lumber Co. v. Chicago Title Co. of Idaho*, 115 Idaho 56, 60, 764 P.2d 423, 427 (1988). "[C]ontracts for title insurance and policies are the source of the duties between the parties, not negligence principles." *Id*. at 58, 764 P.2d at 425. Issuing a preliminary title report, a commitment for title insurance, or a policy does not make the title insurer an abstractor of title. *Id.* at 59, 764 P.2d at 426; *Anderson v. Title Ins. Co.*, 103 Idaho 875, 879, 655 P.2d 82, 86 (1982). In order for the title insurer to be liable as an abstractor, "it must be shown that the act complained of was a direct result of duties voluntarily assumed by the insurer in addition to the mere contract to insure title." *Brown's Tie*, 115 Idaho at 59, 764 P.2d at 426.

Neither the district court nor Mr. Cummings pointed to any evidence indicating that Northern Title assumed a duty to act as an abstractor of title. The manager of Northern Title testified that she was contacted by the realtor employed by the Stephenses and asked to start the initial title work with the buyer to be determined. The title work was done by the title department, and it consisted of "[s]earching the property, creating the documentation, putting together the legal descriptions, any special exceptions, taxes, anything that they would need to compile to go into the report for the commitment for title insurance." Thus, preparing a legal description of the property was part of the work done in order to issue the commitment for title insurance. In the commitment, the title company had to describe the land to be covered by the title insurance policy.

The district court stated:

> As a title and abstract company, Northern Title acted negligently with regards to Cummings. . . .
> Here Northern Title had been asked by the realtors to begin the initial title work on Stephens' property west of the highway. As part of that work, Northern Title was tasked with preparing the legal description that would be attached to the Real Estate Purchase and Sale Agreement, Commitment of Title Insurance, and ultimately the warranty deed conveying title from Stephens to the buyer. It was completely reasonable to foresee that either the buyer or seller would be injured by Northern Title not exercising ordinary care in preparing this legal description.

25

The legal description created by Northern Title in the process of performing the title work to be done in order to issue a commitment for title insurance was used for the contract between the Stephenses and Three Bar Ranches, and it was used in the commitment for title insurance issued to Three Bar Ranches. Northern Title had no duty to conduct a reasonable search of title. Idaho Code section 41-2708(1)(b) provides that no policy of title insurance shall issue unless either the insurer or its agent "has caused to be made a search and examination of the title and a determination of insurability of title in accordance with sound title underwriting practices." In *Brown's Tie*, we held that the statute did not require the title company to conduct a reasonable search of title.

> Unlike similar statutes of sister states, section 41–2708(1) of the Idaho Code does not mandate a "reasonable search" of title. It provides only that "a search and examination of the title" shall be made. We find it significant that the Idaho legislature, unlike other states, has chosen to omit the word "reasonable." It has long been the rule in Idaho that only abstractors of title may be found negligent, and this Court has never deviated from the rule.

115 Idaho at 60, 764 P.2d at 427.

There is no evidence that Northern Title assumed the duty of being an abstractor of title. Therefore, the district court erred in awarding damages against it on that ground. Mr. Cummings did not sue Northern Title for issuing a policy of title insurance that did not insure the real property described in the commitment for title insurance. The district court found: "The Court finds Northern Title did not act negligently in performing any action insofar as it relates to its business as an insurance agent. The Court will not find Northern Title liable for any negligence due to its actions as a title insurance agent." We reverse the judgment against Northern Title. Because the remaining issues raised by Northern Title in its cross-appeal sought to reverse the award of damages for other reasons, we need not address those issues.

## IX.
### Is Any Party Entitled to an Award of Attorney Fees on Appeal?

Mr. Cummings seeks an award of attorney fees on appeal against Mr. Stephens based upon Idaho Code section 12-120(3) and an attorney fee provision in the real estate contract. He seeks an award of attorney fees on appeal against Northern Title pursuant to Idaho Code section 12-120(3) on the ground that this is an action to recover in a commercial transaction. Both the

26

statute and the contractual provision only provide for the awarding of attorney fees to the prevailing party. Because he has not prevailed on appeal, he is not entitled to an award of attorney fees.

Mr. Stephens seeks an award of attorney fees on appeal against Mr. Cummings pursuant to Idaho Code sections 12-120(3) and 12-121. The district court determined that Mr. Cummings's lawsuit against Mr. Stephens was an action to recover in a commercial transaction, and Mr. Cummings does not challenge that determination. Because Mr. Stephens was the prevailing party on this appeal by Mr. Cummings, Mr. Stephens is entitled to an award of attorney fees on appeal against him.

Northern Title seeks an award of attorney fees on appeal against Mr. Cummings pursuant to Idaho Code section 12-120(3). The district court held that Mr. Cummings's lawsuit against Northern Title was an action to recover in a commercial transaction, and Mr. Cummings does not challenge that determination. Because Northern Title is the prevailing party on this appeal by Mr. Cummings and his judgment against Northern Title must be reversed, Northern Title is entitled to an award of attorney fees on appeal against him.

## X.
## Conclusion.

We affirm the dismissal of Mr. Cummings's claims against Mr. Stephens and we reverse Mr. Cummings's judgment against Northern Title. We award Mr. Stephens and Northern Title costs, including reasonable attorney fees, on appeal.

Chief Justice BURDICK, Justice HORTON and Justice Pro Tem WALTERS **CONCUR.**

J. JONES, Justice, concurring in part and dissenting in part.

I concur in the Court's opinion, except for the award of attorney fees and costs against Cummings in favor of Northern Title. The escrow agreement between Cummings and Northern Title appears to exclude such an award. The escrow agreement provides in pertinent part:

> If an action is brought involving this escrow and/or Escrow Agent, the parties agree to indemnify and hold the Escrow Agent harmless against liabilities, damages and costs incurred by Escrow Agent (including reasonable attorney's

27

fees and costs) except to the extent that such liabilities, damages and costs were caused by the gross negligence or willful misconduct of Escrow Agent.

This provision allows Northern Title to recover its attorney fees and costs in an action brought by one of the other parties, except in the instance where the attorney fees and costs were caused by Northern Title's gross negligence or willful misconduct. In such instance, it appears that Northern Title effectively waives a claim for attorney fees and costs. That is precisely the situation here.

During 25 years of private practice in Jerome and Boise, I dealt extensively with title companies, but I can't recall a situation where an escrow and title policy customer was as poorly served. Cummings should have been able to recover damages against Northern Title but, unfortunately, did not pursue the appropriate course toward that end. It appears that Cummings' indecision as to whether to seek title to the property on the east side of the road (East Property) or to pursue damages, and his ultimate decision to pursue both, resulted in a situation where an adequate case was not made for any remedy. For example, it appears that Cummings surprised his own counsel at trial by testifying that he was seeking damages, as opposed to asking for title to the East Property. This reversal in position may have contributed to Cummings' failure to present an adequate case for damages against any party.

Northern Title's missteps began with preparing a legal description that was incorrect. The realtor, Dorothy Julian, claims to have told Northern Title at the outset that the property being sold was strictly on the west side of the road. Northern Title prepared a legal description including Stephens' East Property, as well as two pieces of property that Stephens did not own. When the error was called to Northern Title's attention, it prepared a new legal description that excluded the two parcels Stephens did not own but failed to exclude the East Property. It is hard to fathom how the second blunder could have occurred. Nevertheless, the closing took place with the second incorrect legal description.

To compound the problem, when Stephens discovered about a month later that he had conveyed the East Property to Cummings, he notified Northern Title. Without providing effective notice to Cummings or obtaining his approval, Northern Title unilaterally amended the deed to exclude the East Property and rerecorded the deed. An escrow agent must act in an even-handed, impartial manner. Indeed, the escrow agreement specified:

Escrow Agent is not the agent of any single party. Rather, Escrow Agent agrees to prepare documents, secure the execution of documents, record documents, disburse funds, and otherwise close the transaction in the accordance with the joint directions of the parties. Escrow Agent has no other duties or obligations.

Further, an escrow holder "cannot be the agent of only one of the parties." *Foreman v. Todd*, 83 Idaho 482, 485, 364 P.2d 365, 366 (1961). An escrow agent "is empowered to aid neither [party], being merely the conduit used in the transaction for conveyance and safety. He may, therefore, be looked upon as a special agent of both parties, with powers limited only to those stipulated in the escrow agreement." *Id.* at 486, 364 P.2d at 366 (quoting 19 Am. Jur., Escrow, sec. 13, p. 430).

In considering Northern Title's conduct in this regard, the district court ruled:

Failing to get Cummings's authorization prior to altering the legal description and rerecording a warranty deed containing a legal description that was altered from the title commitment legal description that the parties had agreed upon constitutes gross negligence, willful misconduct, or both. There was not the slightest degree of care shown when Northern Title rerecording the warranty deed.

The district court therefore held, and I believe correctly, that Northern Title was liable to Cummings for breach of contract.

The district court declined to award breach of contract damages to Cummings based on a lack of proof of damages. Cummings did not appeal that ruling. However, in its cross-appeal Northern Title listed as an issue: "Whether the district court's finding of gross negligence and willful misconduct against Northern Title should be reversed, where the Escrow General Provisions authorize Northern Title to record a correction deed that comported with the realtors' instructions." It should be first observed that the escrow agreement did not provide for recording a correction deed based on instructions from any realtor. No realtors were party to the escrow agreement and the escrow agreement clearly called for "joint directions of the parties." This Court's opinion did not grant the requested relief to Northern Title on this issue and, therefore, it did not prevail on one of the issues raised in its cross-appeal. Thus, the district court's finding of "gross negligence, willful misconduct, or both" effectively stands.

Although the district court did not include a title insurance policy issue in its breach of contract finding, in my view that is the more egregious conduct. Northern Title was the agent for the title insurance carrier. It agreed that it would procure a title insurance policy for Cummings

29

covering the agreed-upon (and incorrect) legal description. However, the title policy was not issued to Cummings until eight months after closing. The policy did not cover the legal description agreed upon for closing but, rather, the legal description that Northern Title placed in the rerecorded deed without Cummings' knowledge or approval a month after closing. Consequently, Cummings had no basis to make a claim against the title policy. By delaying the issuance of a title policy and then issuing a policy that did not conform with the escrow agreement, Northern Title greatly complicated Cummings' ability to obtain redress. Had Cummings learned of the problem seven months earlier, he might have been more inclined to pursue the most appropriate remedy—rescission.

Northern Title's fumbles and misconduct laid the groundwork for this case. Unfortunately, the district court was unable to award damages for Northern Title's breach of contract because Cummings did not present appropriate evidence to establish his damages stemming from that breach. As noted in the Court's opinion, no other evidence made its way into the record regarding other potential damages caused by Northern Title. Those deficiencies cannot be remedied by this Court on appeal. However, we can deny attorney fees and costs to Northern Title, based on the waiver provision in the escrow agreement and its partial failure of success on its cross-appeal.